IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| HANS JOACHIM KEIL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-3417-CV-S-RED |
| | ) | |
| MICHAEL SPINELLA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court are a Motion by Defendants Michael Spinella, Laura Foster, Todd Hamilton, and Jack Barnhart for Summary Judgment (Doc. 28), the United States' Motion to Dismiss and Motion for Summary Judgment (Doc. 66), and Plaintiff's Motions for Summary Judgment (Docs. 81, 84). After careful consideration, the Court **GRANTS** the Agents' Motion for Summary Judgment (Doc. 28), **GRANTS** the United States' Motion to Dismiss and Motion for Summary Judgment (Doc. 66), and **DENIES** Plaintiff's Motions for Summary Judgment (Docs. 81, 84).

## BACKGROUND

Plaintiff Hans Joachim Keil was arrested on September 9, 2008 on an immigration arrest warrant, which indicated he was an illegal alien. Four federal agents were present during the arrest: U.S. Immigration and Customs Enforcement ("ICE") Senior Special Agents Laura Foster and Todd Hamilton, ICE Resident Agent in Charge Michael Spinella, and U.S. Department of State Special Agent Jack Barnhart (collectively, the "Agents"). Prior to Keil's arrest the Agents were aware Keil possessed a facially valid U.S. passport. However, during an interview in December 2007 with Agent Foster and another ICE agent, Keil stated he was born in Samoa, his

mother was Samoan and Chinese, and his father was German.

Before arresting Keil, the Agents discovered Keil applied for a certificate of citizenship from the Immigration and Naturalization Service (the "INS") and a U.S. passport in 1967. On his application for a certificate of citizenship, Keil claimed he derived citizenship through his mother. Keil stated that his father was not a U.S. citizen. The INS instructed Keil to appear for a hearing. Keil never appeared and nothing in Keil's immigration records indicated the INS granted Keil's application. Keil's records also showed Keil filed a second application for a certificate of citizenship in 1976. In 1978 the INS asked Keil for proof of his mother's presence in the United States prior to his birth. No records indicated Keil responded or was ever issued a certificate of citizenship. After Keil's arrest the Agents received Keil's passport application materials. His passport was originally issued with the understanding that Keil would provide a certificate of citizenship from the INS.

Following the arrest, Special Agent Barnhart swore a criminal complaint against Keil, which United States Magistrate Judge James England approved. Judge England issued an arrest warrant, which the U.S. Marshal executed. It was eventually discovered that Keil had a valid claim to U.S. citizenship through his father. All charges were dropped and this lawsuit followed.

## ANALYSIS

I.  **THE AGENTS**

Keil asserts Fourth and Fifth Amendment claims against the Agents, who defend based on qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts engage in a two-part inquiry to determine whether officials are entitled to qualified immunity. "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Id*. at 815-16. Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. at 816 (citation omitted).

### A. Fourth Amendment

Keil alleges the Agents violated the Fourth Amendment by unlawfully arresting him and issuing a detainer.

#### 1. Keil's Fourth Amendment claim fails to the extent it is based on his arrest, as there was probable cause to arrest Keil.

If Keil's arrest was supported by probable cause, the arrest did not violate the Fourth Amendment. *See Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (stating, "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause"). "Probable cause exists if the facts and circumstances within the arresting officers' collective knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing ... that the suspect has committed, is committing, or is about to commit an offense." *United States v. Taylor*, 519 F.3d 832, 834 (8th Cir. 2008) (internal quotations and citation omitted). An arrest is lawful if there was probable cause to believe the person "had violated any applicable statute, even one not contemplated by the officers at the moment of arrest." *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1106 (8th Cir. 2004).

Relying on *Villanueva*, 19 I. & N. Dec. 101 (B.I.A. 1984), Keil argues his arrest was not

supported by probable cause because his U.S. passport, of which the Agents were aware, conclusively proved his U.S. citizenship. However, under *Lawyer*, the question is not whether the Agents had probable cause to arrest Keil as an illegal alien, but rather whether there was probable cause to arrest Keil for violating any federal statute, even one the Agents did not think of the moment of the arrest. Because there was probable cause to arrest Keil under 18 U.S.C. §§ 911 and 1544, there was no constitutional violation.

        a.       <u>Probable cause under 18 U.S.C. § 911.</u>

§ 911 provides, "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 911 (2010). The Ninth Circuit Model Criminal Jury Instructions provide the elements of § 911. The government must prove:

> First, the defendant directly and falsely represented himself to be a citizen of the United States;
>
> Second, the defendant was not a citizen of the United States at that time;
>
> Third, the defendant made such false representation willfully, that is, the misrepresentation was voluntarily and deliberately made; and
>
> Fourth, the false representation was made to someone who had good reason to make inquiry into defendant's citizenship status.

Ninth Circuit Model Jury Instruction § 8.49 (2010). There were facts within the Agents' knowledge showing these four elements. The first two elements were met for two reasons. First, when interviewed by Agent Foster long prior to his arrest, Keil indicated that he was not born in the United States, his mother was Chinese and Samoan, and his father was German. Second, upon obtaining Keil's immigration records, the Agents discovered that Keil had applied for a certificate of citizenship twice, never received a certificate, and did not comply with the INS's

4

instructions to appear at a hearing and to provide evidence of his mother's presence in the United States prior to his birth. These facts would warrant a prudent person in believing Keil was falsely representing U.S. citizenship and that he was not a U.S. citizen. The third and fourth elements were also met. The Agents had probable cause to believe Keil was willfully representing U.S. citizenship because the evidence showed he had not followed through with the INS, despite its repeated requests. The fourth element was met, considering Keil told the Agents he was a U.S. citizen.

### b. Probable cause under 18 U.S.C. § 1544.

§ 1544, Misuse of Passport, in part provides, "Whoever willfully and knowingly uses or attempts to use any passport in violation . . . of the rules prescribed pursuant to the laws regulating the issuance of passports . . . [s]hall be fined [or imprisoned]. . . or both." A rule regulating the issuance of a passport is that a passport shall only be issued to a U.S. citizen or national. 22 C.F.R. §§ 51.1(l), 51.2 (2010). The Agents had probable cause to believe that Keil was willfully using his passport as a non-U.S. citizen based on Keil's own statements to Agent Foster and behavior toward the INS. It is not a question of whether or not Keil was, in fact, a U.S. citizen, but rather is a question of whether the Agents had probable cause to believe that Keil was not a U.S. citizen.

### 2. Keil cannot state a Fourth Amendment claim based on the Agents' issuance of a detainer, as there is no evidence that the detainer caused Keil to be seized.

8 C.F.R. § 287.7 explains the significance of issuing a detainer:

A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in

5

situations when gaining immediate physical custody is either impracticable or impossible.

Therefore, issuing a detainer alone does not cause imprisonment or a seizure by ICE. Rather, a seizure only occurs when the agency to which the detainer was issued turns custody over to ICE. In this case, ICE issued a detainer for Keil to the U.S. Marshal. However, ICE cancelled the detainer when Judge England released Keil on bond. Because ICE never took Keil into its custody, the detainer did not cause any seizure and Keil's claim based on the issuance of the detainer fails.

### B. <u>Fifth Amendment</u>

Keil asserts the Agents violated his right to substantive due process by arresting him without lawful authority and violated his substantive and procedural due process rights by seizing and revoking his U.S. passport.

#### 1. **Keil's due process claim fails to the extent it is based on his arrest and the seizure of his U.S. passport because the Fourth Amendment provides the proper analytical framework for those claims.**

Keil argues the Agents violated his right to due process by arresting him without lawful authority and by seizing his U.S. passport. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In this case, the Fourth Amendment provides the proper analytical framework for Keil's arrest and seizure claims, as the Fourth Amendment textually proscribes unreasonable seizures.

Even if considered under the Fourth Amendment, these claims fail. The Agents had

6

probable cause to arrest Keil, as discussed above in Section A-1. Further, the Agents did not violate the Fourth Amendment by seizing Keil's U.S. passport, as the Agents had probable cause to arrest Keil for violating §§ 911 and 1544, and it was reasonable for them to believe that Keil's passport was evidence of those crimes.

> **2. Keil's claim that the Agents violated his substantive and procedural due process rights by revoking his passport fails, as Keil has no evidence that the Agents were involved in revoking his U.S. passport.**

Keil claims his rights to substantive and procedural due process were denied when his U.S. passport was revoked. However, that claim cannot stand against the Agents because the Agents were not involved in the revocation. The revocation letter was authored by Susan M. Bozinko. The Agents did not revoke Plaintiff's passport nor were they involved in considering his challenge. Because "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009), and Keil has not shown that the Agents were involved in revoking his passport, his claim fails.

Keil argues his U.S. passport was effectively revoked without the proper procedures when he was arrested on September 9, 2008. However, the passport was not actually revoked until September 17, 2008. Keil was not deprived of any due process right on the date of his arrest, because the Agents only seized his passport for evidence and did not revoke it.

## II. THE UNITED STATES

Keil asserts negligence, conversion, and false imprisonment claims against the United States pursuant to the Federal Tort Claims Act (the "FTCA").

> **A. Keil's negligence claim is not cognizable under the FTCA, because the facts upon which it is based would not support such a claim against a private**

7

### **person.**

The United States contends that Keil's negligent investigation and negligent issuance of a detainer claims should be dismissed, as they are not cognizable under the FTCA. In enacting the FTCA, the United States selectively waived its sovereign immunity. *Molzof v. United States*, 502 U.S. 301, 305 (1992). The United States no longer retains sovereign immunity

> for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (2010). The United States is liable "in the same manner and to the same extent as a private individual under like circumstances. . . ." 28 U.S.C. § 2674 (2010).

The United States argues that since Keil's negligence claim is based on the government's failure to follow its own regulations and procedures, it is not a claim that could be brought against a private person. Keil argues the Court should grant summary judgment in his favor because the Agents 1) targeted Keil in an investigation that led to his unjustified arrest, 2) issued a detainer in direct violation of statute and regulation, and 3) seized and revoked Keil's facially valid U.S. passport in violation of controlling regulations. The statutes and regulations Keil alleges the Agents violated are all federal statutes and regulations.

Because none of Keil's assertions would support a negligence claim against a private person, dismissing Keil's negligence claim is proper. Keil could not assert a claim against a private person for negligent investigation, as Missouri has not recognized the tort of negligent investigation. *Wirth v. Coll. of the Ozarks*, 26 F. Supp. 2d 1185, 1189 (W.D. Mo. 1998); *Forest v. Barnes Jewish Hosp.*, 2009 WL 877716, at *7 (E.D. Mo. 2009). Keil could not assert a negligence claim against a private person for issuing a detainer or seizing a U.S. passport in a

manner inconsistent with federal statutes and regulations, as the statutes and regulations Keil alleges were violated only govern the conduct of federal employees.

### B. Keil's conversion claim is barred by the detention-of-goods exception.

Keil's conversion claim is based on the Agents' retention of his U.S. passport and Samoan diplomat passport. 28 U.S.C. § 2680(c) bars, "Any claim arising [out of] . . . the detention of any goods, merchandise, or other property by any . . . law enforcement officer." However, this FTCA exception does not apply if

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2) the interest of the claimant was not forfeited;
>
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law. . . .

28 U.S.C. § 2680(c) (2010). The United States Court of Appeals for the Eighth Circuit considers the detention-of-goods exception broad. *Cheney v. United States*, 972 F.2d 247, 248 (8th Cir. 1992). Keil argues the detention-of-goods exception does not apply because the four elements listed above are met. The United States correctly points out that the first element is missing. Keil's passports were not seized pursuant to an asset-forfeiture law, but rather were seized as evidence in a criminal investigation. No indictment was returned against Keil stating his passports would be forfeited and the government never initiated forfeiture proceedings. Therefore, dismissing Keil's conversion claim is proper.

### C. Summary judgment is proper on Keil's false imprisonment claim because his arrest was legally justified.

The United States argues two warrants provided legal justification for Keil's arrest. "False imprisonment, also called false arrest, is 'the confinement, without legal justification, by the wrongdoer of the person wronged.' " *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. 2006) (quoting *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo. 1969)). A prima facie case of false arrest is ordinarily made by presenting evidence of the arrest and showing "it was made without a warrant." *Frank v. Wabash R. Co.*, 295 S.W.2d 16, 22 (Mo. 1956) (citing *Wehmeyer v. Mulvihill*, 150 Mo. App. 197, 130 S.W. 681, 684 (1910)). There is legal justification for an arrest when the arrest is made pursuant to a warrant that is "fair and valid on its face." *See Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. 1984).

Agent Spinella issued an immigration arrest warrant for Keil on September 8, 2008. On September 10, 2008, Agent Barnhart swore a criminal complaint against Keil. Judge England approved the complaint and issued an arrest warrant, which the U.S. Marshal executed. Therefore, two warrants provided legal justification for Keil's arrest and continued detention.

Keil argues the warrants were not "fair and valid" because he possessed a facially valid U.S. passport that conclusively showed he was an American citizen. Under Section 123 of the Restatement (Second) of Torts, a warrant is valid if:

> (a) it is regular in form, and
> (b) it is issued by a court, body, or official
> > (i) having authority to issue the warrant for the conduct for which it is issued and which is described therein, and
> > (ii) having jurisdiction over the person sufficiently named or otherwise described therein, and
> (c) all proceedings required for the proper issuance of such a warrant have duly taken place.

Keil does not contend the warrants did not meet these requirements. Rather, he argues the warrants were facially invalid because he had a U.S. passport. Comment a to Section 123

provides,

> A warrant is valid even though the court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged. The guilt or innocence of the accused is not a matter which concerns the officer. It is his duty to serve the warrant and he is privileged to do so, even though he has reason to believe or even knows that the person for whose arrest the warrant is issued is in fact innocent of the offense with which he is charged.

Under this comment, even though the Agents "had reason to believe" that Keil was not an illegal alien, given his facially valid U.S. passport, they still had a duty and a privilege to arrest Keil pursuant to the warrants. Therefore, the fact that Keil possessed a U.S. passport does not show that either warrant was unfair or invalid.

Keil's false arrest claim is also partly based on the detainer, which was not legally justified by a warrant. Nonetheless, summary judgment is proper on the claim, because the detainer did not cause Keil to be confined, as discussed in Section I-A-2 above.

## CONCLUSION

### I. THE AGENTS

Keil's Fourth Amendment claim fails to the extent based on his arrest, as probable cause supported arresting Keil for misusing a passport and falsely claiming U.S. citizenship. Keil's Fourth Amendment detainer claim fails because the detainer did not cause Keil to be seized or taken into ICE's custody. Keil's Fifth Amendment unlawful arrest and unlawful seizure of his passport claims fail because the arrest and seizure were supported by probable cause. Keil's claim regarding the revocation of his passport fails because the Agents were not involved in the revocation. Accordingly, the Court grants complete summary judgment to the Agents.

### II. THE UNITED STATES

Dismissing Keil's negligence claim is proper because such a claim would not lie against a

private person who acted similarly to the Agents.  The Court hereby dismisses Keil's conversion claim as barred by the detention-of-goods exception.  Summary judgment is proper on Keil's false arrest claim because two warrants legally justified Keil's arrest and continued detention.

**IT IS SO ORDERED**.

DATED: January 6, 2011            */s/ Richard E. Dorr*
                                                           RICHARD E. DORR, JUDGE
                                                           UNITED STATES DISTRICT COURT